## HUDSPETH ET AL. vs. THOMASON.

[BILL IN EQUITY TO ENFORCE VENDOR'S LIEN AND TO REFORM DEED OF CONVEYANCE, &C.]

1. *Chancery; when has jurisdiction to reform deeds, &c., to require execution of deeds in place of those destroyed.*—A court of chancery has ample jurisdiction to reform deeds and other written instruments, on the ground of mistake, even upon parol evidence, where no statutory provision intervenes to prevent it ; and where a conveyance of lands has been accidentally lost or destroyed, so that the purchaser is, thereby, unable to show a good title, the vendor may be required to make the purchaser another deed.

2. *Bill to correct misdescription of deed ; what no defense to.*—On a bill, by a vendee to correct a mistake in the description of the land bought, it is no defense that the vendor was paid in Confederate treasury notes, if voluntarily received by him, where the vendee is chargeable with no deceit or fraud on his part.

3. *Same ; when the same bill may join one defendant to have a deed reformed and with another against whom vendor's lien is sought to be enforced.*—It A buy lands of B, and pay for them, and receive B's deed for the same, in which, by the inadvertence and mistake of B, the lands are misdescribed, and after A's purchase, and before the mistake is discovered A sells the same lands to C, the brother of B, who pays half of the purchase-money, and gives his promissory note for the remainder, and takes A's bond for titles ; if after the mistake is discovered, B refuses to correct the mistake, and he and C combine and confederate together, to prevent the correction of the mistake, and, also, to avoid the payment of the remainder of the purchase-money, on the part of C, A may join both in a bill to correct the mistake, and to set up and enforce his lien on the lands, for the unpaid purchase-money.

4. *Same ; when not error to treat cross-bill as waived.*—On such a bill, if the defendants make their answers a cross-bill, but take no steps to obtain an answer to their cross-bill, and go to a hearing on the original bill, answers, and cross-bill and exhibits, the chancellor may dismiss the cross-bill, or treat the same as waived on the part of the defendants, and proceed to decree the relief prayed in the original bill, if the admissions in the answers will authorize it.

APPEAL from Chancery Court of Barbour and Henry. Heard before Hon. B. B. McCRAW.

The appellee, Thomason, who was a non-resident and

complainant in the court below, filed his bill against R. T. and Joel A. Hudspeth, the appellants, seeking to enforce a vendor's lien on six hundred and thirty acres of land mentioned in the bill, and to have corrected certain misdescriptions in the deed therefor, which had been executed to him by R. T. Hudspeth, and prayed for general relief, &c.

It appears from the bill and answers that appellee, in 1863, through his agent, one Edwards, purchased the lands mentioned from R. T. Hudspeth, paid him the whole price therefor in Confederate currency, and received a warranty deed therefor from said Hudspeth and wife at the time of the sale. This deed was destroyed by Sherman's army in passing through Georgia in 1864. There is nothing in the proof to show who was in the possession of the land from the date of the sale up to the year 1865, except the denial of R. T. Hudspeth that he had ever surrendered his possession.

The bill charges, that in the year 1865 R. T. Hudspeth rented the lands of appellee, through Edwards, his agent, and acknowledged at the time that the land belonged to appellee, and paid rent therefor; that, in 1866, complainant sold the lands to Joel A., a brother of R. T. Hudspeth, who was then living on the land, gave said Joel A. a bond for titles, received from him $1500 in cash and his promissory note for a like amount, for the remainder of the purchase-money, and appellee then put him in possession, &c.; that, after this, by some collusion and fraud, said Joel A. put R. T. Hudspeth in possession of the land, who now claims title thereto in himself; that both defendants deny complainant's rights in the premises, and said Joel A. refuses to pay the remainder of the purchase-money, although long since due.

All the parties, at the time of the transactions mentioned in the bill, were of full age and acting in their own right.

R. T. Hudspeth, in his answer, admits the sale as alleged; that both parties assented to the sale of the same land, (being that described in the bill,) and that in making the deed he "intended to put in the right numbers," but

alleges, that by inadvertence and mistake, he drew up the deed so that it conveyed only eighty acres of the six hundred and thirty sold ; that, as to the remainder of the land mentioned in the bill, "there was no writing signed by the parties to be bound thereby, or by any one authorized to bind them, or either of them, containing said contract of purchase or any part thereof ;" that the sale of the lands, except the eighty acres, was wholly verbal and in parol, and supported only by a payment of Confederate money. He admits, that after the sale, and until he became aware of the mistake, that he considered the land as belonging to complainant; that after this, discovering the mistake, " knowing that the price paid was grossly inadequate and paid in an illegal currency, he determined to avail himself of all the legal advantages given him by law under the facts, and that he refused to recognize complainant's rights in the premises." He also denies that he ever surrendered possession of the lands to complainant, or lost dominion of the land, unless "by reason of his considering it to belong to complainant," and holding under these circumstances, when he was ignorant of the mistake in the deed, and, therefore, believed that the legal title to the land was in complainant. The answer no where states when the discovery of the mistake was made, and denies that Joel A. was ever, legally, in possession of said lands, and alleges that what was charged as a payment of rent was money paid by respondent to said Edwards for his trouble in bringing about the sale between complainant and respondent, and not as rent. Joel A. Hudspeth, in his answer, alleges that at the time of the sale complainant had the legal title to only eighty acres of the land, and could not make title to the remainder ; that for this reason the real consideration of the sale to him has failed ; that this defect of title was not discovered by him until after the sale, and that when he discovered this, and "became aware that his brother and correspondent had received only a trifling sum in an illegal consideration for the sale of the lands, he determined to render no assistance to complainant in consummating his speculation, and agreed with co-defendant

'that the facts, as set forth in their respective answers, be submitted to the chancellor for such decree as equity demanded." He also denies that complainant was ever in possession of the land, unless the facts stated in the answer of his co-defendant amount to possession, but admits that the $1500 note is still due.

In both answers, which were sworn to, all collusion, combination and fraud are denied, and each prays that their respective answers be taken as cross-bills ; that complainant be made a party defendant thereto by publication, and required to answer the several allegations thereof without oath, and that the chancellor will grant them, respectively, "such relief upon the facts set up," in their answers, "as to equity seems meet." In both answers respondents offer to allow complainant a rebate to the amount of the value of the Confederate money paid for the land to R. T. Hudspeth, upon the repayment by complainant of the $1500 received by him from Joel A. Hudspeth.

The bill was filed in March, and the answers in April, 1869. Up to the May term, when the cause was heard, nothing was done towards making complainant a party by publication or otherwise ; no answers had been filed by complainant, and no decree *pro confesso* had been taken against him.

The cause was heard upon the original bill, and the answers, and, on the hearing, the chancellor dismissed the answers as cross-bills, and decreed that complainant was entitled to the relief prayed; that the note of A. J. Hudspeth was a lien on the lands mentioned in the bill, for the unpaid purchase-money, and that the land be sold for the payment of the same, &c. ; that all title of R. T. Hudspeth, to the lands mentioned in the bill, be divested out of him and invested in complainant, and that said Hudspeth execute a valid and correct deed to complainant of the lands mentioned in the bill, within ten days, &c.

The defendants appeal, and here assign as error the dismissal of the answers as cross-bills, and the decree rendered by the chancellor.

31

Pugh & Baker, for appellants.
W. C. Oates, and Watts & Troy, *contra.*

PECK, C. J.—This case originated in the chancery court of Henry county, by a bill filed by the appellee as plaintiff, against the appellants as defendants. The objects of the bill were—1st. To reform a deed of conveyance of certain lands sold by the defendant, R. T. Hudspeth, to the plaintiff, and correct a mistake in the description of the land as set forth in said deed ; and 2d. To set up and enforce a vendor's lien on the same land, which were afterwards, and before the discovery of the mistake, sold by plaintiff to the defendant, A. J. Hudspeth, the brother of said R. T. Hudspeth.

There can be no doubt that a court of chancery has ample jurisdiction to reform and correct mistakes in deeds and other written instruments, even upon parol evidence, where no statutory provision intervenes to prevent it.— Adams' Eq. 168–9, ma. note 1 ; and, if a conveyance to a purchaser has been accidentally lost or destroyed, so that the purchaser, thereby, is unable to show a good title, the vendor may be compelled to make another deed of conveyance.—Adams' Eq. 167, ma. note a., and Willard's Eq. 300–1.

On these authorities it was competent for the chancellor to correct the mistake in the description of the land, in the deed of the defendant, R. T. Hudspeth, to the plaintiff, and the deed being lost, or destroyed, it was not improper to require him to execute another deed containing a correct description of the land sold by him to the plaintiff.

The mistake was fully admitted in his answer, and that is sufficient to sustain the chancellor's decree.

The objection made by him, in his answer, to reforming the said deed and correcting the mistake, is without force. The fact that the land was paid for in Confederate money or treasury notes, did not affect the validity of the sale.— *Ponder et al. v. Scott,* 44, 241. No deceit or fraud on the part of the plaintiff or his agent, by whom the purchase was made, is pretended. The purchase was made in good faith, and the vendor voluntarily received his price, all he asked for his land, in Confederate money, and made a deed

Hudspeth et al. v. Thomason.

that he believed, at the time, described the land correctly; but, as he admits in his answer, by his own inadvertence and mistake only described correctly a small part of the land; therefore, it is but the plainest equity and justice to require him to correct his own mistake.

2. The chancellor decided correctly in holding that the plaintiff had a lien on the same lands for the unpaid purchase-money due to him, on the sale made to the defendant, A. J. Hudspeth, before the mistake in the plaintiff's deed was discovered. Said defendant admits the purchase, and the note given by him to the plaintiff, made an exhibit to the bill, and that the same, with the exception of the credit entered upon it, is due and unpaid. The decree properly declared the said note a lien upon the said lands, and required the same to be paid within the time specified, or that the lands should be sold by the register.

There was no objection made in the chancery court to the frame of the bill, or in the manner of its verification.

The bill charges a combination between the defendants, and although there is a seeming denial on their part, yet no one can read their answers without clearly seeing that said defendants were acting in concert and with a common design—1st. To defeat the correction of the mistake in the plaintiff's deed; and 2d. To avoid the payment of A. J. Hudspeth's note, and pave the way to recover back the fifteen hundred dollars already paid to the plaintiff. They were, therefore, properly made joint defendants to the bill of complaint.

There was no error in dismissing the cross-bills; no step was taken to make the plaintiff a party to them, by publication or otherwise; no answer was in fact filed, nor were said cross-bills taken as confessed.

They might, for these reasons, be either dismissed, or treated as waived by the defendants. After a careful examination, no reversible error is discovered in the decree of the chancellor, and the same is affirmed at the appellant's costs.