Jones and McBride, Trustees, v. Buddington, Ex.—Syllabus.

35 121
35 148

LOTON H. JONES AND EUGENE B. McBRIDE, TRUSTEES, APPELLANTS, VS. OZIAS BUDDINGTON, SURVIVING EXECUTOR, ETC., WILLIAM M. BOSTWICK, THE FLORIDA CENTRAL RAILROAD COMPANY ET AL., APPELLEES.

1. Witnesses were examined on interrogatories filed with a master to the identity and contents of certain books referred to in the interrogatories as exhibits, designated by letters of the alphabet; the books with the exhibit marks on them were placed in the hands of the master with the interrogatories, and being handed to the witnesses when examined were identified by them and referred to as exhibits designated by letters; the master did not mark the books as filed in evidence, but returned them to the court with the interrogatories, and his certificate showed that the books were shown the witnesses and their testimony clearly identifies the books as exhibits about which they testified; motion was made to admit the books in evidence, and the court excluded them from the consideration of the case: *Held*, to be error.

2. Original papers or records transmitted to this court for inspection under the 9th rule of its practice may be examined in connection with the transcript of the record for the purpose of ascertaining the true meaning of papers or records copied therein, and which can not be set forth in copy as fully and truly as by the originals, but the rule does not contemplate that such original papers or records. forming no part of the record of the cause in the lower court. and not found in the transcript. can be made a part of the record here by having them set up under the order of the judge for inspection.

Appeal from the Circuit Court for Alachua county.

## STATEMENT.

Appellants filed a bill in chancery in the Duval Circuit Court against appellees, the substantial allegations of which are, that I. D. Hart, deceased, was in his life-time seized and possessed of certain described real estate situated in the city of Jacksonville, Florida, water lot 27 and one-half of water lot 28, being a part thereof, and about the 5th day of May, 1857, bargained and sold said real estate to the Florida, Atlantic & Gulf Central Railroad Company, and in consideration therefor said company transferred and delivered to Hart stock in the said company to the amount of $10,-000. That $6,000 of said stock was for and in consideration of water lot 27 and one-half of water lot 28, and the remaining $4,000 of stock was in payment of the other portion of said real estate, all of which will appear by reference to the books and records of said railroad company. That said Hart accepted said stock in full payment of said real estate, and at the time of its receptions delivered possession of said real estate to the said company, and thereupon the company entered and continued in the use and occupation of the same. That in June, 1857, said railroad company sold and conveyed to William A. Forward and James A. Patten said real estate together with all other lands owned by it, in trust to secure the payment of certain bonds issued July 1st, 1857, and known as the free land bonds of said company; and that by said trust deed the company not only conveyed the real estate therein described to said trustees and their successors, but also the road-bed, depots, stations, locomotives and equipments of said company, subject to a prior

lien created as hereinafter stated, by an act of the Legislature, in favor of the Internal Improvement Fund. That said trust deed or mortgage was duly recorded in the clerk's office for Duval county on the 3rd day of February, 1858, a copy of which was attached as exhibit "A." That I. D. Hart departed this life in 1861, five years after he sold and delivered posession of the said real estate mentioned as sold by him to said company, and that during said time he was one of the directors of said company, and at all times after said transfer recognized the title of the company to said lands, and acquiesced in the conveyance of the same in trust as aforesaid. It is alleged that both Patten and Forward had died, and that Green H. Hunter and Louis I. Fleming had been duly appointed to act in their stead in the further execution of the trust; that after its organization, and prior to the execution of the said trust deed, said railroad company accepted the provisions of the act of the Legislature to encourage a liberal system of internal improvements in this State, approved January 6th, 1855, and obtained the endorsement by the Trustees of the Internal Improvement Fund of certain bonds of said company issued originally and pursuant to said act, and that by the provisions of said act a first lien was created upon the road-bed, iron, workshops, depots and franchises of said company to secure the payment of said bonds, and among other things it was further provided in said act that upon failure of any railroad company accepting its provisions to pay the interest on said bonds and the annual sinking fund of one *per cent.* that the Trustees of the Internal Improvement Fund should have the power to sell said roads. That said trustees in pursuance of the power conferred on them did seize and sell the said Florida, Atlantic & Gulf Cen-

tral Railroad, its depots, workshops, and franchises, and that the same were struck off and sold to William E. Jackson and associates for the sum of $111,000; that said Jackson and his associates, by act of the Legislature approved July 29, 1868, were incorporated and made a body corporate as the Florida Central Railroad Company, and became vested with all the powers and franchises of the Florida, Atlantic & Gulf Central Railroad Company. That said Florida Central Railroad Company, pursuant to said sale, entered into possession of said railroad, and 'at the same time took possession of said real estate sold by I. D. Hart, and now refuses to restore possession of the same to complainants, and pretends and claims that it acquired title to said lots of land by virtue of said sale as appurtenant to the said Florida, Atlantic & Gulf Central Railroad; whereas, complainants allege that the lien created by the said Internal Improvement Act extended only to the road-bed, iron, depots, workshops, equipments and franchises of said Florida, Atlantic & Gulf Central Railroad, and that the said lots in Jacksonville sold to said company by I. D. Hart were not subject to said lien, but that said lots were acquired from said Hart subsequent to the creation of said lien by complainants in trust free and discharged from any encumbrances whatever, and that the Florida Central Railroad Company, by virtue of the sale by the trustees, acquired no greater or other interest in and to said lots than the Florida, Atlantic & Gulf Central Railroad Company had at the time of said sale. That a large part of said lands having been previously sold and conveyed by complainants and their predecessors in pursuance of said trust and the bonds secured by said trust deed having become due, and being unpaid, and a large proportion of the interest coupons thereto

attached being also unpaid, complainants on the 26th
day of August, 1873, filed a bill in this court to enforce
said trust, and praying an order of sale of said trust
lands for the payment of the amounts found to be due
thereon. That on the 5th day of May, 1874, a special
master was appointed to sell said lands, and in pursu-
ance of said order said master sold the greater part of
said trust lands and made report to the court, but that
the said lots in Jacksonville could not be sold,
although several times offered at public sale, for the
reason stated, to-wit: the cloud over the title to same
on account of claims set up to said lots by other par-
ties in possession. That on the 23rd day of March,
complainants commenced suits in ejectment against
the Florida Central Railroad Company in the Circuit
Court for Duval county, and said suits are at issue in
said court. Complainants would further show that
the original title deeds or evidences in writing from I.
D. Hart to the Florida, Atlantic & Gulf Central Rail-
road Company for said premises, if the same were ever
delivered are not now in the custody or power of com-
plainants, and they have been unable to find the same
or any trace or record thereof, and by reason of the
absence or loss of said deeds complainants have been
greatly embarrassed, and are unable now to proceed
with safety to trial in said suits. That by the last will
and testament of I. D. Hart, Ozias Buddington and
Ossian B. Hart were made executors, the latter of
whom is now dead, and the former survives. The
relationship of the other defendants named in the bill
to I. D. Hart, being his descendents, heirs and legal
representatives is set out. It is also alleged that com-
plainants had made diligent and thorough search
among the papers and records of the Florida, Atlantic
& Gulf Central Railroad Company, and through the

public records of Duval county for deeds to said lands from I. D. Hart to said company, but that none had been found. That Buddington during the year 1882, long subsequent to the purchase of said lands by said company, wrongfully applied to the probate court of Duval county, and obtained an order for the sale of certain of said lots of land for distribution among the said heirs, and that William M. Bostwick now claims and pretends to have purchased said lots or certain of them at a sale pursuant to such order of the probate court, and is now pretending to claim title thereto by virtue of said sale. That complainants hoped that the heirs and representatives of said I. D. Hart, deceased, in consideration of the premises would aid and assist them in obtaining or establishing title deeds to said lands, as in justice and equity they should do, but said heirs and representatives now pretend that said I. D. Hart did not in his life-time sell and convey said town lots to the said railroad as alleged, and that said company had no right to convey the same in trust as alleged, and complainants charge, upon information and belief, that the said I. D. Hart did make and execute under his hand and seal and delivered to said company good and sufficient title deeds at the time of the delivery of possession and receipt by him of the purchase money for said lots, and that said deeds were not recorded, and complainants believe the same have since been lost or destroyed, or else that the said Hart having bargained and sold the said lots of land and received the consideration therefor, intended to execute deeds for the same, but neglected and forgot to make and deliver them as agreed. Further, that said Hart during his life-time, or his said heirs and representatives since his death have not, or either of them, been in possession of said premises or any part thereof

JANUARY TERM, 1895. 127

Jones and McBride, Trustees, v. Buddington, Ex.—Statement of Case.

since the date of the said transfer to said railroad company in the year 1856, and that said Buddington, executor, etc., has wrongfully proceeded to claim said lots as assets of said estate, and had, theretofore advertised and sold some of said lots for distribution under an order of the probate court of Duval county, to William M. Bostwick, who now claims title to certain of said lots by virtue of a conveyance made in pursuance of an order of the said probate court, and with intent to defeat complainants' title and recovery of said lots, and he is now threatening to offer the others for sale and to make deeds therefor, and complainants believe he will attempt to do so unless restrained by order of this court, and that although said sales would be void, they would greatly hinder and embarrass complainants in their proceedings for the recovery of said land and cause a multiplicity of suits to the great damage and injury of complainants, all which doings are contrary to equity and good conscience.

The special relief prayed for is, that should it be found that I. D. Hart, deceased, had never executed any deed to the said Florida, Atlantic & Gulf Central Railroad Company for said land sold by him to said company, that then his said heirs be decreed to execute and deliver to complainants a good and sufficient deed for said premises, and upon their failure or inability to do so, that a master be appointed by this court and required to execute such conveyance and deeds; and that should it be found that deeds were executed and delivered by said Hart to said company, that then the original deeds may be re-established by decree of this court, and said defendants, the heirs and representatives of said I. D. Hart, and all persons claiming by, through or under them, be forever enjoined from claiming title, selling or attempting to sell said lots, and

128          SUPREME COURT.

Jones and McBride, Trustees, v. Buddington, Ex.—Statement of Case.

that said defendants be required to discover and set forth whether or not they or either of them have any of said deeds in their possession or control, or have any knowledge of the existence or whereabouts of the same, and that if any of them have any of said deeds in their possession or under their control, that they be required to deliver the same to a special master of this court; and that the said defendants be required to discover whether they or either of them have sold any of said lands since the death of I. D. Hart to any persons, and if so, to whom; and also that the conveyance to Bostwick be declared void and cancelled, and that he be perpetually enjoined from claiming or asserting title to said lots, and that the Florida Central Railroad Company be required to restore to complainants the possession of said premises.

Answers were filed by Buddington, Bostwick, Thomas E. Stribling and wife, and the Florida Central Railroad Company. Buddington admits the death of I. D. Hart and the probate of his will, and that Hart was in his life-time seized of certain lots in the city of Jacksonville, known as water lot 27 and the east half of water lot 28, and that respondent as surviving executor of the estate of I. D. Hart, deceased, not wrongfully, but rightfully, as it was his duty to do, applied for and obtained from the probate court of Duval county an order or orders for the sale of said lots of land, and that they were sold by virtue of said order or orders, and purchased by William M. Bostwick, who claims title thereto. As to every other allegation in the bill of complaint material or necessary to be admitted, denied or proven, respondent denied the same, and especially is it denied that I. D. Hart ever bargained and sold the said lots to the Florida, Atlantic & Gulf Central Railroad Company, or delivered posses-

JANUARY TERM, 1895.    129

Jones and McBride, Trustees, v. Buddington, Ex.—Statement of Case.

sion thereof to said company; and respondent denies
that any agreement in writing for the purchase of said
premises, or any portion thereof, or any memorandum
or note thereof in writing was ever made, entered into
or signed by the said I. D. Hart, or by any person by
him thereunto lawfully authorized, and the benefit of
the statute of frauds is claimed the same as if specially
pleaded. As to the allegations in reference to one-half of
water lot 28, it is averred that any sale thereof at agree-
ment to sell the same by such description would have
been void for uncertainty; and it is also specially de-
nied that the Florida, Atlantic & Gulf Central Rail-
road Company ever executed any valid deed of trust
and mortgage of said lots of land situated in the city
of Jacksonville, Florida.

The answer of Bostwick is substantially the same as
that of Buddington.

Stribling and wife admit the allegations of the bill
as to the death of I. D. Hart, the probate of his will,
the appointment of his executors, and that Budding-
ton was the surviving executor; that Hart was during
his life-time seized and possessed of the lots described
in the bill, but respondents have no personal knowl-
edge of any contract made and entered into between I.
D. Hart and the Florida, Atlantic & Gulf Central
Railroad Company for the sale of said lands. They
say that they have been informed, and believe, and
therefore allege that said I. D. Hart did not bargain
and sell the said lots to said railroad company; did not
deliver possession of the same to it, and did not re-
ceive and accept said stock in full payment for said
land. Further, that said company did not enter into
and continue in the use and occupation of said lots,
and that there was no agreement in writing for the

130 SUPREME COURT.

Jones and McBride, Trustees, v. Buddington, Ex.—Statement of Case.

purchase of said premises or any part thereof, or any memorandum or note thereof in writing ever made, entered into or signed by the said Hart or by any person by him thereunto lawfully authorized, and that no improvements were ever erected by said company upon certain lots mentioned in the bill, being lots alleged to have been sold by Hart to the company other than water lots 27 and half of water lot 28; and it is denied that the company ever took possession of the lots described in the bill, or any part of them, except the said water lots. Respondents denied that Hart ever executed any deed to the said railroad company conveying to it the lots described in the bill, and alleged that the copy attached to the bill is not a true and correct copy of the deed of trust and mortgage from the Florida, Atlantic & Gulf Central Railroad Company; and it is denied that said company ever executed any valid deed of trust and mortgage to the lots of land described in the bill. Further, that a part of the lots described in the bill are vacant and unoccupied, and have not been in the actual possession of any one, but have been claimed by the executors of I. D. Hart since his death, and part of said lots have been in the possession of defendant William Caulk under a license from the surviving executor for a period of more than seven years before the commencement of this suit. That on the 3rd day of September, 1880, respondents filed a bill in the Circuit Court for Duval county against said surviving executor, and all persons entitled to share in the distribution of said estate, and for a final settlement and distribution of said estate, and a final decree has been rendered in said suit discharging the said Buddington from the further administration of said estate; that under a decree made in said suit certain of the lots mentioned in the bill were

sold for distribution to Thomas E. Stribling, William Caulk, J. W. Fitzgerald, P. P. L'Engle, J. E. T. Bowden, G. B. Griffin, A. S. Baldwin and Lula Dearing, and deeds were made to each of them severally for the lots which they respectively purchased; that the lot purchased by Stribling has since been sold and conveyed by him to one Shuber, and the other lots are in the possession of divers persons whose names are unknown to respondents, and they do not know under what title they claim, or how long they have so held possession.

The answer of the Florida Central Railroad Company admits that I. D. Hart resided in Jacksonville, had died, and that Ozias Buddington was the surviving executor of the will of said decedent, and that decedent during his life-time was seized and possessed of the lots described in the bill of complaint. It is also admitted that said lots were sold in May, 1857, to the Florida, Atlantic & Gulf Central Railroad Company in consideration of stock in said company to the amount of $10,000.00, which stock was transferred and delivered to Hart, but defendant was not informed, except by complainants' bill, as to how the said stock was proportioned in payment for the said lots. It is admitted that Hart accepted said stock in full payment for the lots and delivered possession of the premises to the said Florida, Atlantic & Gulf Central Railroad Company, and that said company entered upon, used and was in the manifest possession and occupation of the same, but a number of said lots have since been taken possession of by divers persons who continued to occupy and retain possession thereof. It is admitted that Hart was a director in the Florida, Atlantic & Gulf Central Railroad Company, and it is charged that he acquiesced in and recognized the title to said lots

132    SUPREME COURT.

Jones and McBride, Trustees, v. Buddington, Ex.—Statement of Case.

as being in the said company. The death of Forward and Patten is admitted, and that Fleming and Hunter had been appointed in their places. It is admitted that the Florida, Atlantic & Gulf Central Railroad Company accepted the provisions of the Internal Improvement Act, and procured the endorsement by the Trustees of the Internal Improvement Fund of the bonds of the company known as the first mortgage bonds, and that they were, under the provisions of said act, a first lien on the road-bed, iron, workshops, depots, ticket-offices, right-of-way, lumber yards, terminal facilities and franchises of the said Florida, Atlantic & Gulf Central Railroad Company. The seizure and sale of said railroad and its property, including depots, workshops, ticket-offices, lumber-yards, terminal facilities, right-of-way and franchises, by the Trustees of the Internal Improvement Fund in March, 1868, is admitted, and it is alleged that water lot 27 and the one-half of water lot 28 were included in and the title to the same passed to the purchasers at said sale, being a part of the right-of-way of said company in its use and occupation for terminal facilities. It is admitted that William E. Jackson and associates were the purchasers of said railroad, and that they became a body politic vested with the powers and franchises of the said Florida, Atlantic & Gulf Central Railroad Company, under the name of the Florida Central Railroad Company, and that this company entered into possession of the property of the said Florida, Atlantic & Gulf Central Railroad Company, including water lot 27 and the one-half of water lot 28. It is denied that the lien created by the Internal Improvement Act under which the Florida, Atlantic & Gulf Central Railroad Company and its property rights and franchises were sold to the Florida Central Railroad Com-

pany extended only to the road-bed, iron, depots, work-shops, equipments and franchises of the former company; and it is averred that said lots were the subject of said lien, and that all right, title and interest in and to any and all of said lots of the Florida, Atlantic & Gulf Central Railroad Company passed to the purchasers under the sale to Jackson and his associates, and became the property of the Florida Central Railroad Company, and that this company took said lots free and discharged from any encumbrance whatever, and acquired a perfect title to the same. It is also admitted that the original title deeds from Hart to the Florida, Atlantic & Gulf Central Railroad Company to said lots, if delivered by him, are not now in the custody of complainants, and that they have been unable to find the same, or any trace or record thereof, and that diligent search among the papers of the Florida, Atlantic & Gulf Central Railroad Company has been made, and that no deeds from Hart can be found, but it is admitted that Hart did sell said lots to said railroad company for a valuable consideration, and delivered possession of the same, and did make and execute in due form deeds to said land and deliver the same to said company. It is denied that the exhibit attached to the bill, purporting to be a copy of a deed of trust to said lots of land from the Florida, Atlantic & Gulf Central Railroad Company, is a true copy, and it is denied that said company ever executed any valid deed of trust to said lots, as described in the bill of complaint; and it is alleged that if, as a fact, any valid deed of trust or mortgage of said lots were made, that the lien given by the said Internal Improvement Act, approved January 6th, 1855, was a prior actual existing first lien upon the road-bed, iron, depots, work-shops, equipments, right-of-way, ticket-offices, lumber-

yards and terminal facilities of said Florida, Atlantic & Gulf Central Railroad Company, and the said trustees had the right to seize and sell said property by virtue of said act, and that the purchasers at the sale made by the trustees in 1868 took all of said lots free and unencumbered from any deed of trust, mortgage or other instrument in writing. That under and by virtue of said sale all the right, title and interest of the said Florida, Atlantic & Gulf Central Railroad Company in and to said lots passed to Jackson and his associates, and under the organization of the Florida Central Railroad Company, under the act of July, 1868, became the property of that company. That said water lot 27 and one-half of water lot 28 are now and were at the time of said sale by the trustees a part of the right-of-way of the defendant company and its successors, and were then and are now in the actual use of said company and its successors as part of its right-of-way, and said lot and half lot prior to the date of the sale by the Trustees of the Internal Improvement Fund, and continually from that date to the present time, constituted and formed a portion of the right-of-way of the defendant company and its successors, and were then and are now in the actual use of defendant and its successors for depots, ticket-offices, lumber-yards and general uses for terminal facilities. That if there was ever any trust deed conveying the property described in the bill of complaint for the purpose of securing any such bonds as those described, the validity of which is specially denied, the same was subject to the prior lien of the Trustees of the Internal Improvement Fund, under and by virtue of the said Internal Improvement Act, approved January 6th, 1855, and the sale under the provisions of said act gave the purchasers thereat a good title to the property, free-

from any lien under such trust deed, and defendant denies the right of complainant to subject the property described in the bill, or any part thereof, to the purposes alleged in the bill.

Replications were filed to the answers, and decrees *pro confesso* taken against defendants not answering. The case having been transferred to Alachua county, in the Fifth Circuit, on account of the disqualification of the Judge of the Fourth Circuit, a master was appointed to take testimony, and after his report the court dismissed the bill on final hearing. On petition of holders of free land bonds referred to in the bill, the court appointed Loton M. Jones and Eugene B. McBride trustees of the free land bonds of the Florida, Atlantic & Gulf Central Railroad Company, it appearing that Louis I. Fleming and Green H. Hunter had died, and Jones and McBride entered an appeal from the final decree dismissing the bill.

The other facts of the case are stated in the opinion of the court.

*John A. Henderson, Fleming & Daniel, C. P.* and *J. C. Cooper* for Appellants.

*A. W. Cockrell & Son* for Appellees.

MABRY, C. J.: (*After stating the facts*).

It is contended by counsel for appellants that the court erred in overruling their motion made before the hearing of the cause to admit in evidence certain books referred to in the testimony of witnesses, and marked exhibits A, B, C, D and E. Thomas H. Maxey, who was elected secretary and treasurer of the Florida, Atlantic & Gulf Central Railroad Company in February,

1866, was examined as a witness for complainants on interrogatories filed before a master. In an interrogatory propounded to the witness by complainants he was asked to examine a book that would be handed to him by the master, entitled "Minutes F., A. & G. Central R. R.," and marked exhibit "A," and say whether or not he recognized it as the minute-book of the Florida, Atlantic & Gulf Central Railroad Company, and if so, why he recognized it as such. The witness answered that he had examined "minutes F., A. & G. Central R. R.;" and marked exhibit "A," and recognized the same as the minute-book of the Florida, Atlantic & Gulf Central Railroad Company from the proceedings recorded therein, many of the entries in the book being in his own handwriting. The witness was also asked to examine entries made in said book on certain dates and state if he knew in whose handwriting they were made. What were the entries about which the witness was interrogated and about which he testified does not appear in the interrogatories or in his answers. Witness was also asked to examine certain other books that would be handed to him by the master, called Ledger, Stock Ledger, Journal and book of entry of original certificates of stock issued, marked respectively exhibits B, C, D and E, and state if they were the original books of the Florida, Atlantic & Gulf Central Railroad Company. The witness answered that he had examined the books, and recognized them as the original books of said company. He was further examined as to the handwriting of certain entries in the books, but what were the contents of the books or entries therein about which he was examined does not appear from the questions and his answers.

George R. Foster, who was secretary and treasurer of the Florida, Atlantic & Gulf Central Railroad Com-

pany from July, 1859, to October, 1861, was also examined in reference to said books. It is made to appear that exhibit "A" of the testimony of Thomas H. Maxey, entitled "Minutes F., A. & G. Central R. R.," was handed this witness, and he was asked if he recognized it, and if so, how he recognized it, and what it was. Witness stated that he was familiar with the book, and saw in it records made by him as the officer of the company whose duty it was to make such records, and it was a book of record of the proceedings of the directors and stockholders of the Florida, Atlantic & Gulf Central Railroad Company. Witness was handed the said books marked exhibits B, C, D and E, and stated that they were the original books of the Florida, Atlantic & Gulf Central Railroad Company, and which were, during his official connection with the company as secretary and treasurer, in his custody and control. This witness was also examined as to the handwriting of entries made in said books, but the contents or substance of the entries about which he was examined does not appear from his testimony.

F. P. Fleming, of the law-firm of Fleming & Daniel, testified that he had examined the books in evidence marked exhibits A, B, C, D and E, being the books of the Florida, Atlantic & Gulf Central Railroad Company; that for several years prior to that time there had been in the office of his firm in the city of Jacksonville several boxes containing books and papers of the Florida, Atlantic & Gulf Central Railroad Company, and that among them he found the books referred to above, and placed them in the hands of the master prior to the examination of Thomas H. Maxey.

Counsel for complainants made a motion to admit in evidence the said books marked exhibits A, B, C, D and E, on the grounds stated in the certificate of the

master and the affidavit of F. P. Fleming, accompany-
ing the motion. The master certified that the said
books were in his hands, and were exhibited to Thomas
H. Maxey as the exhibits referred to and as to which
he was interrogated, and they were the exhibits as to
which he testified; that they were the same books re-
ferred to by George R. Foster and F. P. Fleming,
and were exhibited to them at the time they
respectively testified, and remained in his cus-
tody until they were forwarded with the testi-
mony to the judge for final hearing of the cause.
The affidavit of F. P. Fleming states that he was
the member of the firm of Fleming & Daniel who
signed the firm name to the agreement made in
the cause, and that when he signed the agreement that
the testimony in the cause was closed, it was done
under the understanding and impression by him that
the said books marked exhibits A, B, C, D and E, and
referred to in the testimony of the witnesses, were in
evidence, and not with any view of excluding the
same, and that had he not been under such under-
standing and impression he would not have entered
into such agreement as to closing the testimony. E.
M. L'Engle, of counsel for defendants, filed an affi-
davit to the effect that he never had any understanding
with F. P. Fleming, or any body else that the books
referred to were in evidence, and that affiant was in no
way responsible for any impression that said books
were in evidence. That affiant, as one of the attorneys
for defendants, had never impeached the identity of
the books referred to, but still submitted that they
were never offered in evidence, and could not under
the agreements entered into be received.

The record in this cause does not show any written
agreement as to closing the testimony therein, but this

case was disposed of at the same time that the case of the Florida Central and Western Railroad Company *et al.* vs. Ozias Buddington, Executor, *et al.* was decided, and it was therein agreed that the testimony and agreements in the former case should be considered as evdience in the latter, with the further stipulation that the testimony, including certain agreements, was then closed in the latter case. A motion was made in both cases to admit in evidence the books referred to, and marked exhibits A, B, C, D and E, and the court entered an order, after reciting that the motion of complainants to allow them to introduce in evidence exhibits A, B, C, D and E, designated in said motion, came on for hearing, "that said motion be and the same is hereby overruled." The judge also certified that the following books, to-wit: Minutes of the Florida, Atlantic & Gulf Central Railroad Company, marked exhibit "A," the Stock Ledger of said company, marked exhibit "B," the Journal of said company, marked exhibit "C," the Ledger of the company, marked exhibit "D," and Stock certificate stub book of said company, marked exhibit "E," are the books mentioned in the motion as exhibits A, B, C, D and E, and were before him at the hearing; and an order was made directing that the original books be transmitted to the clerk of this court, for inspection and use as may be proper and necessary on the final appeal of the cause. The books referred to have been transmitted to the clerk of this court, and we discover no file marks on them as having been admitted in evidence before the master, or filed in the cause, but the minute-book has marked on it "Exhibit A," the Stock Ledger "Exhibit B," the Journal "Exhibit C," the Ledger "Exhibit D," and the Stock certificate stub book "Ex-

140          SUPREME COURT.

Jones and McBride, Trustees, v. Buddington, Ex.—Opinion of Court.

hibit E.'' We think the court committed an error in its ruling on the motion, and thereby excluding the books mentioned as a part of the record in the cause. If, as a matter of fact, the books had not been formally admitted in evidence, and the omission to do so was the result of inadvertence, or even carelessness of counsel, under the showing made they should have been admitted in evidence. The power of a court of chancery to correct such a mistake, and that it should be exercised when necessary to the ascertainment of the real merits of a controversy, cannot be questioned.

But our conclusion, from what is shown by the record before us, is that the books mentioned were sufficiently introduced in evidence before the master to entitle them to be considered as a part of the record in the case. The first witness, Thomas H. Maxey, who testified in reference to the books, was examined on interrogatories before a master. The books marked as exhibits had been placed in the hands of the master preparatory to the examination of the witness, and the interrogatories propounded referred to the books as exhibits. The books were shown the witness and he referred to them in his testimony as exhibits. In the examination of George R. Foster the same books were shown to him as exhibits to the testimony of Maxey, and F. P. Fleming, the other witness who testified in reference to the books, and who was counsel for complainants, says that he had examined the books in evidence marked exhibits A, B, C, D and E, and that he had placed them in the hands of the master prior to the examination of Maxey. The master's certificate shows that the books were shown the witnesses as exhibits, designated by letters, and the testimony clearly identifies the books as exhibits about which the witnesses testified. Counsel for defendants

did not question the identity of the books, and we think there is no room for doubt as to this. Counsel regarded the books as in evidence during the examination of the witnesses as to their identity and as to entries therein, and the master retained them and sent them with the testimony of the witnesses to the court for final hearing. In our judgment the court erred in not considering the books as introduced in evidence before the master, and in excluding them from the record of the ruling made. It is not claimed that they were not relevant to pertinent testimony in the case, and the pleadings indicate that they were. The objection raised to the books as evidence is, that they were not in fact put in evidence before the master. 3 Greenleaf on Evidence, sec. 308, note 3, Fifth Edition; Dodge v. Israel, 4 Wash. 323.

Counsel for appellants contend further that the case should be considered by this court on the record, including the books sent up under the order of the judge for our inspection. Conceding that this court should pass upon the case, if proper to do so, we do not see how we can consider the books as a part of the record on the transcript before us. As a matter of fact no part of the contents of the books appears in the record certified to us, and we can not know therefrom what said books contain. We conclude from the action of the court in refusing to admit the books in evidence that they were considered as forming no part of the record of the cause in the court below, and the clerk has not certified in the transcript sent up any portion of the contents of said books. It is provided by the 9th rule of practice of this court that "whenever the Circuit Judge shall deem it necessary or proper that an original paper or record shall be inspected by the Supreme Court, he may order the same to be trans-

142 SUPREME COURT.

Jones and McBride, Trustees, v. Buddington, Ex.—Opinion of Court.

mitted in such manner as shall seem proper, and this court will in that case consider such original in connection with the transcript of the proceedings." Such original papers and records when properly transmitted to this court for inspection may be examined for the purpose of explaining or developing the true meaning of papers or records copied in the transcript, and which can not be set forth in copy as fully and truly as by the originals, but the rule does not contemplate that such original records or papers, forming no part of the record of a cause in the lower court, can be incorporated into the transcript of the record here by sending them up under an order for our inspection. As no part of the contents of the books mentioned are incorporated into the record certified to us, it is not proper that we should consider the original books sent up for inspection as any part of the evidence in the case.

A disposition of the case on the record before us without any reference to said books would deprive appellants of the benefit of testimony to which they are entitled, and which they tried to have the lower court consider on the final disposition of the case, but which was denied to them by the erroneous ruling of the court on the motion.

Without expressing any opinion as to the merits of this case, we deem it proper, in view of the erroneous ruling of the court in refusing to consider the books referred to as evidence in the case, to reverse the decree appealed from, with directions that said books be admitted in evidence and considered by the court in connection with the other evidence in the disposition of the case. An order will accordingly be made revers-

ing the decree appealed from, with directions for further proceedings as herein indicated.