WILLIAM M. BOSTWICK, *Appellant,* v. FLORIDA CENTRAL
AND WESTERN RAILROAD COMPANY, A CORPORATION; AND
SEABOARD AIR LINE RAILWAY, A CORPORATION, *Appellees.*

EQUITY—ON BILL PRAYING SPECIFIC PERFORMANCE, DE-
FENDANT MAY BE REQUIRED TO EXECUTE DEED
IN PLACE OF ONE LOST OR DESTROYED.

On a bill in equity for specific performance of a contract to con-
vey land, wherein there is a prayer for general relief, where
the proofs show that a deed was in fact made, but has been
lost or destroyed the court of equity has power to compel the
execution of a conveyance to take the place of the lost or
destroyed deed.

This case was decided by Division B.

Appealed from the Circuit Court for Alachua County.

The facts in the case are stated in the opinion of the
court.

*Axtell & Rinehart,* for Appellant;

*F. P. Fleming, Jr.,* and *Blount & Blount & Carter,* for
Appellees.

TAYLOR, J.—The appellees filed their bill for specific
performance of an alleged contract for the sale and con-
veyance of water lot twenty-seven and the East half of
water lot twenty-eight located on the St. Johns river in
the City of Jacksonville, in Duval county against Ozias
Budington, as surviving executor of the last will of
Isaiah D. Hart, deceased, and William M. Bostwick, and
for an injunction against Bostwick to restrain him from

proceeding with an ejectment suit that he had instituted for recovery of possession of said lots.

The bill was originally filed in Duval county, but because of the disqualification of the Judge of that Circuit the cause was transferred to the Circuit Court of Alachua County.

There was a final decree in favor of the complainants ordering the appellant William M. Bostwick to convey by deed to the appellee the Seaboard Air Line Railway Company the lots in question and perpetually restraining him from proceeding with his ejectment suit for recovery of said lots. Bostwick based his claim to said lots upon a commissioner's deed made in pursuance of a sale thereof under an order of the Probate Court of Duval County as part of the estate of I. D. Hart, deceased, made on the application of Ozias Budington as surviving executor of the will of said Hart.

From this decree the defendant William M. Bostwick takes his appeal to this court.

In the devolution of the title from the Florida Atlantic and Gulf Central Railroad Company, to whom the bill alleges that I. D. Hart contracted to sell and convey the lots in question, is a deed from the Board of Trustees of the Internal Improvement Fund of Florida to William E. Jackson and his associates by which The Florida Atlantic and Gulf Central Railroad, its iron, equipments, workshops, depots and franchises and all its property of every kind was conveyed to said Jackson and associates.

This sale of the said railroad and its property was made by the Trustees of the Internal Improvement Fund under the provisions of section three of an act approved January 6th, 1855, entitled "An Act to provide for and encourage a liberal system of Internal Improvements in

this State," because of default in the payment of interest and sinking fund on the bonds of said road. The said section three of said act provides as follows:

"That all bonds issued by any Railroad Company under the provisions of this act, shall be recorded in the Comptroller's office and so certified by the Comptroller, and shall be countersigned by the State Treasurer, and shall contain a certificate on the part of the Trustees of the Internal Improvement Fund that said Bonds are issued agreeably to the provisions of this act, and that the Internal Improvement Fund for which they are Trustees, is pledged to pay the interest as it may become due on said Bonds. All bonds issued by any Railroad Company under the provisions of this act, shall be a first lien or mortgage on the road bed, iron, equipment, workshops, depots and franchise; and upon a failure on the part of any Railroad Company accepting the provisions of this act, to provide the interest as herein provided on the Bonds issued by said company, and the sum of one per cent. per annum, as a sinking fund, as herein provided, it shall be the duty of the Trustees, after the expiration of thirty days from said default or refusal, to take possession of said railroad and all its property of every kind, and advertise the same for sale at public auction to the highest bidder, either for cash or additional approved security, as they may think most advantageous for the interest of the Internal Improvement Fund and the bondholders. The proceeds arising from such sale shall be applied by said Trustees to the purchase and cancelling of the outstanding bonds issued by said defaulting company, or incorporated with the sinking fund: Provided, That in making such sale, it shall be conditioned that the purchasers shall be bound to continue the payment of one-half of one per cent. semi-annually to the sinking fund.

until all the outstanding bonds are discharged, under the penalty of an annulment of the contract of purchase, and the forfeiture of the purchase money paid in."

It is contended here for the appellant that under the provisions of this section of the law the Trustees of the Internal Improvement Fund had no authority or power to sell or convey the lots in question as they formed no part of the road-bed, iron, equipment, workshops, depots or franchise upon which the said act creates a lien to secure the bonds issued by said company, and that said lots, or the interest therein of said railroad company, did not pass to said William E. Jackson and his associates by said deed from the Trustees of the Internal Improvement Fund, and that consequently the appellee Seaboard Air Line Railway Company, who derived its title through the said William E. Jackson and associates, has not and could not derive from said Jackson any title to or interest in said lots that would enable it to maintain this suit therefor. This contention is untenable. The proofs show that the Florida Atlantic and Gulf Central Railroad Company acquired these lots in the beginning as and for its depot facilities at its water terminal on the navigable waters of the St. Johns river, and that it has used them as such from the year 1857 to the present time. We think the word "depots" in the quoted section of the act includes the lots in question here and that they passed to William E. Jackson and his associates by the deed from the Board of Trustees of the Internal Improvement Fund, and from said Jackson and his associates by various devolutions of title to the present appellee, The Seaboard Air Line Railway Company. In the case of Knevals v. Florida Cent. & P. R. Co., 66 Fed. Rep. 224, in which it was sought to be shown that these same lots in question here did not pass by a foreclosure sale of the Florida Central

Railroad, the court says: "The general term of a 'railroad', as ordinarily used, includes many kinds of property, both real and personal, and cannot, with any degree of propriety, be confined to the track, or the land, simply, necessary to lay the track upon. It is not necessary to consider whether the land can pass as appurtenant to the land, for it is unquestionable that land may pass as appurtenant to a railroad. It is claimed that nothing can be appurtenant to the railroad unless it is necessary for its operation. Here the term 'necessary' may be used with several significations and limitations, and we do not consider that its most restricted and confined use should be accepted in this connection. It can at no time be claimed that a strip of land 100 feet wide, or 200 feet, as is frequently granted by charter, is absolutely necessary for the laying of a track and the operation of a railroad; and yet it is considered that it is reasonably necessary and appurtenant to the road and all passes with it." In that case the court held that the lots in question here passed by the sale as an appurtenant to the railroad. On the 21st of October, 1910, the defendant made a motion for leave to make objections to the introduction in evidence of Exhibits A, B, C and D, of the complainant the same being extracts from the record books of The Florida, Atlantic and Gulf Central Railroad Company showing the proceedings of its board of directors at divers meetings of said board, and of its stockholders at stockholders' meetings, and its Stock Ledger. This motion was denied and its denial is assigned as error here, and the objections thus sought to be interposed to the admission of such records in evidence are now sought to be urged upon us here. These objections came too late. In the case of Florida Central and Western Railroad Company v. Bostwick, 35 Fla. 143, 17 South. Rep. 405, and in the com-

panion case of Jones v. Budington, 35 Fla. 121, 17 South.
Rep. 399, it was held that these exhibits were sufficiently
introduced in evidence before the master to entitle them to
be considered as a part of the record in the case, and the
decrees in both of those cases were reversed here on the
ground that the court below refused to consider such ex-
hibits as testimony in the two cases. Those two decisions
became the law governing this case in the matter of the
admission and consideration in evidence of these exhibits,
and these objections now made to their consideration as
evidence comes too late.

From the conclusions to which we have arrived to the
effect that a deed of conveyance to the lots in question
was in fact made by I. D. Hart in his life time to The
Florida, Atlantic and Gulf Central Railroad Company,
the predecessor in title of the appellee, the Seaboard Air
Line Railway Company, and that such deed has been lost
or destroyed, it becomes unnecessary to consider the ques-
tions presented as to whether there was such a written
contract from I. D. Hart for the sale of these lots as could
be specifically enforced in equity either because not signed
by him or because of an insufficient description of the lots
in dispute. We think the proofs show conclusively that
I. D. Hart did sell these lots to the said railroad company
together with some other lots not involved herein in con-
sideration of the issue to him of ten thousand eight hun-
dred dollars in the stock of said company and that such
stock was delivered to him, and that he put the said rail-
road company in possession of said lots. That the said
Hart was a director of said railroad company and took
an active part in the management of its affairs. That
he acted as one of a committee for said board of directors
of said railroad company in contracting for, and in the
supervision of the erection of a railway wharf on the lots

in question and the laying of the railway track across a part of said lots and upon said wharf. That at a stockholders' meeting of said railroad company when some question was raised as to his right to vote the one hundred and eight shares of the stock issued to him in payment for these and other lots the attorney for the said railroad company, who was also acting as president of the company, stated at said meeting in the presence and hearing of said I. D. Hart that Mr. Hart had conveyed the lots he had agreed to convey to the railroad company and the stock had been issued to him as agreed upon. To which statement by the said attorney the said Hart assented by his silence. That on the first day of June thereafter, in 1857, the said lots were mortgaged by the railroad company to certain trustees to secure bonds of the railroad company, and that the said Hart was present at a meeting of the board of directors when the making of this mortgage was authorized with his consent as a director of the company. He stood by and saw the railroad company expend large sums of money in the erection of their permanent terminal improvements upon these lots, himself taking an active part as a director of said company in the location and erection thereof. And again the bill prays for a discovery from Ozias Budington as surviving executor of said I. D. Hart, deceased, as to whether from the papers left by said Hart at his death there was any evidence of a conveyance by said Hart of said lots to the said railroad company. In the answer of the said Budington to the bill in this case there is a significant silence on the subject of this discovery so sought by the bill. Upon all the proofs in the case we think the equities of the case were abundantly shown to be with the appellee complainant, and that under the prayers of the bill there being a prayer for general relief, the decree of

the Circuit Judge was right even though it may have been predicated upon erroneous grounds or reasons. That a court of equity has power to compel the execution of a conveyance to take the place of a deed that has been lost or destroyed seems to be well settled. Hudspeth v. Thomason, 46 Ala. 470; Bohart v. Chamberlain, 99 Mo. 622, 13 S. W. Rep. 85; Cummings v. Coe, 10 Cal. 529; Stokoe v. Robson, 19 Ves. Jr., 385.

The decree of the court below in said cause is hereby affirmed at the cost of the appellant.

TAYLOR and HOCKER, J. J:, concur;

WHITFIELD, C. J., and SHACKLEFORD, J., concur in the opinion.

COCKRELL, J., being disqualified, took no part.