Bohart v. Chamberlain.

## BOHART v. CHAMBERLAIN, *Appellant*

1. **Equity:** LOST DEED. The evidence in this case examined, and *held* to warrant the finding that a deed of trust had been executed to plaintiff by defendant and subsequently lost, although defendant testified that he never executed such deed to plaintiff or any one else; that collaterals held by plaintiff, for which the deed of trust was to be substituted, were never returned to defendant, but were collected by plaintiff and credited on the note secured by the trust deed, and that defendant was not the owner of the west half of the quarter section covered by the alleged trust deed, but that the same was owned by his wife.

2. ———: ———. A court of equity can render a declaratory decree establishing the existence of a lost deed.

3. ———: ———. It may also direct the re-execution of a lost deed.

*Appeal from Clinton Circuit Court.*—HON. G. W. DUNN, Judge.

AFFIRMED.

*Thos. E. Turney* for appellant.

(1) At the time of the institution of this suit the note secured by the deed of trust alleged to have been executed by defendant was long past due, the plaintiff had "a plain, adequate and complete remedy at law," and the court erred in entertaining jurisdiction of the cause. R. S., secs. 3217, 3208 and 3558; *Biddle v. Ramsay*, 52 Mo. 153; *Railroad v. Reynolds*, Sup. Ct. Mo., not yet reported; *Odle v. Odle*, 73 Mo. 289-294. Under no head of equity jurisdiction can its action be sustained. Fraud is not charged. There is no account between the parties. Two suits have already been brought, and, if the action of the court is sustained, another must be brought or a sale must be made by the trustee, when one suit would have sufficed. R. S., *supra*. The present suit is not to restore a record or to foreclose a lost deed of trust, but is to establish the existence of a deed of trust which the petition alleges was never recorded. (2) The effect of the decision is to divest defendant of his title to eighty acres of land and transfer it to another for plaintiff's use. This is accomplished by parol evidence in contravention of the statute of frauds. To justify the decision the evidence must be not simply preponderating, but such as to leave no room for doubt in the mind of the chancellor. *Forrester v. Scoville*, 51 Mo. 268; *Stephenson v. Adams*, 50 Mo. 475; *Bunse v. Agee*, 47 Mo. 370; *Underwood v. Underwood*, 48 Mo. 527; *Modrell v. Riddle*, 82 Mo. 31-36, and cases cited. And he must prove that the deed was given for the southwest quarter of section 30 in township 55 of range 30.

*Thos. J. Porter* for respondent.

(1) "One of the most common interpositions of equity is in the case of lost deeds or other instruments under seal." 1 Story's Eq. Juris. [4 Ed.] sec. 81; Snell's Principles of Equity, p. 357. And this is not

changed by the fact that a suit at law could be maintained on the lost instrument. Secs. 83–84, *supra.*
(2) The jurisdiction of equity is not determined by the existence of a legal remedy, but by a "plain, adequate and complete remedy." Story, *supra*, sec. 76. (3) The first point relied upon by appellant is not sustained by the authorities cited. The remedies at law are "plain, adequate and complete," if there is nothing in the case but the facts that the deed of trust is lost and unrecorded ; but the ground of equitable relief is, respondent is in danger of losing his security while pursuing these remedies. Section 3217, Revised Statutes, cited by counsel only authorizes *lis pendens* notice in "civil actions based on an equitable right, claim or lien affecting or designed to affect real estate." "A proceeding to foreclose a mortgage or deed of trust under our statutes is a proceeding at law and not governed by the rules of proceeding in equity." R. S., secs. 3297–3298 ; *Mason v. Barnard*, 36 Mo. 390. While pursuing his legal remedies the plaintiff is exposed to the peril of finding the property beyond his reach, in the possession of an innocent purchaser. (4) Appellant's second point and the authorities cited do not meet this case. Where the object of the bill is to establish a resulting trust and vest the fee in another, against an absolute title, the evidence should be very convincing to justify it. In this case it is sought only to establish a defeasible title in trust to secure the payment of a debt due from the defendant, which he can extinguish by paying the debt. The decree deprives him of no right and imposes no additional obligation upon him, and the reasons for the strict proof required in the cases cited do not exist in this case.

SHERWOOD, J.—This proceeding, an equitable one, was instituted to declare and establish a deed of trust on the southwest quarter of section 30, township 55 of range 30, the petition alleging that the deed had been

executed, but subsequently lost or destroyed; and there was a prayer for general relief. The answer was a general denial.

The evidence, as preserved in the bill of exceptions, is as follows: The plaintiff, to maintain the issues on his part, testified in his own behalf: "About September 1, 1882, the defendant was indebted to the Lathrop bank on several notes amounting in the aggregate, including interest, to $769.34. These notes were secured by several notes payable to defendant, which were deposited as collateral; in addition to these liabilities, the defendant was indebted to the bank for overdrafts to the amount of $1,735.95. I asked the defendant to secure the amount of his overdraft. Defendant proposed to execute deed of trust on his farm just east of Lathrop to secure the whole amount of his indebtedness, provided I would permit him to withdraw the collaterals so that he could collect them and pay the proceeds on his indebtedness. I consented to this, and drew up a note for $2,503.29, being the amount of his notes and overdrafts, which he signed. In a short time he came back with a deed of trust and handed it to me. I examined it, and found that it was properly signed and acknowledged, securing the note of $2,503.29. I then compared the description of the land in the deed of trust with my county map and found it to be correct, being the southwest quarter of section 30, in township 55 of range 30, in Clinton county, Missouri. Having satisfied myself that it was properly executed, I handed the deed of trust and note to J. R. Pope, my book-keeper, with directions to register the same; and I delivered to the defendant his notes and collaterals and credited his account on the bank books the amount of his overdrafts, $1,733.95.

"Chamberlain (the defendant) handed back the collaterals, which were placed in an envelope with Chamberlain's private papers for safe keeping, and

subject to Chamberlain's order. Several of the notes were subsequently paid, and the amounts passed to the credit of Chamberlain on the books of the bank; these amounts were checked out by Chamberlain and credited on his note of $2,503.29, as appears by endorsement of credit on the back of the note and by the books of the bank. I think the deed of trust was acknowledged before B. J. Burk, and that J. R. Pope was named in it as trustee; at the time of the transaction I made a pencil memorandum on margin of note that it was secured by deed of trust. The deed of trust is lost. I have looked for it diligently, and cannot find it. The deed of trust was executed September 15, 1882, to cover interest, as I charged interest on overdrafts of each month."

On cross-examination the witness said : "The deed of trust, I think, was acknowledged before B. J. Burk. I don't know why I failed to have it recorded; it is my habit to have them recorded. After the execution and delivery of the note and deed of trust, on September 15, 1882, I sold the bank on February 1, 1883, to my brother, James M. Bohart, and this note and deed of trust was turned over to him as part of the assets of the bank."

On re-examination the witness said : "The note was not endorsed or assigned to my brother, and was turned over to him with the understanding that it was secured by a deed of trust. I instituted a suit and recovered a judgment on the note in this court." Witness, being shown the petition and note attached thereto, in said suit, stated : "This is the note referred to, and the credit of one thousand dollars was paid by Chamberlain by check on his account in bank; the pencil memorandum on the margin of note was placed there by me at the time the note was executed and delivered."

The plaintiff then offered in evidence the note and petition for suit thereon, which are, in words and figures, as follows :

"$2,503.29.    LATHROP, Mo., September 1, 1882.

Nine months after date I promise to pay to W. H. Bohart, cashier, or order, at the Lathrop bank in Lathrop, Missouri, twenty-five hundred, three and twenty-nine-hundredths dollars for value received, negotiable and payable without defalcation or discount, with ten per cent. interest per annum after date; the interest, if not paid annually, to become a part of the principal and bear the same rate of interest.

"No. 832.    L. C. CHAMBERLAIN."

Deed of trust one hundred and sixty acres, southwest quarter section 30, township 55, range 30. Said note is endorsed on the back as follows :

"1,000. Received on within note one thousand dollars, January 2, '82.

"Received on the within note five hundred dollars, July 27, 1883."

The petition is as follows, to-wit :—

"Willard H. Bohart,
                    Plaintiff,    In the Circuit Court of
        v.                       Clinton county, Missouri,
"Lucian C. Chamberlain,          April term, 1885.
                    Defendant.

"Plaintiff states that defendant, by his promissory note, herewith filed, dated September 1, 1882, promised for value received to pay plaintiff at the Lathrop bank in Lathrop, Missouri, twenty-five hundred, three and twenty-nine-hundredths dollars, nine months after the date thereof, with interest thereon from said date, at the rate of ten per cent. per annum, and stipulating thereon that, if the interest should not be paid annually, the same should become as principal and bear the same rate of interest.

"Plaintiff states that defendant on the second day of January, 1883, paid on said note the sum of one thousand dollars, and on the twenty-seventh day of July, 1883, defendant paid thereon the sum of five hundred

dollars; that defendant is entitled to a credit on said note for fifty-eight and eighty-hundredths dollars on account for brick sold by Jas. M. Bohart; that the balance and interest thereof remain due and unpaid, and for which plaintiff prays judgment.

"THOS. J. PORTER,

"Attorney for Plaintiff."

J. R. Pope being duly sworn said: "I was book-keeper from September, 1880, to May, 1883, in the Lathrop bank; the entries on the bank books here shown me were made by me at the date therein given; those entries are as follows: The individual ledger, which I have before me, shows, September 15, 1882, L. C. Chamberlain's account amount of overdrafts to be $1733.95. The discount register of the bank (which I have before me) shows of date, May 25, 1881, note against Chamberlain two hundred and twenty-five dollars; June 25, 1881, one hundred dollars; March 22, 1881, three hundred and fifty dollars. On cash book of September 15, 1882, cash is charged interest Chamberlain notes $94.34 on that date. Chamberlain's indebtedness to bank on account of notes and interest thereon together with overdrafts amounted to $2503.29. On that day, September 15, 1882, the check and deposit book show that Chamberlain's account was credited $1733.95 to balance overdrafts. Referring to the cash book of date September 15, 1882, it shows the three notes for two hundred and twenty-five dollars, one hundred dollars and three hundred and fifty dollars respectively and interest on same $94.34, amounting in all to $769.34, were paid. On the same date (September 15, 1882) the discount register (which I have in my hands) shows that L. C. Chamberlain executed his note for $2503.29, dated September 1, 1882, due three months after date, bearing ten per cent. from date, and secured by deed of trust. Corresponding with that entry of date September 15, 1882, and referring to the number on discount register, cash is credited with $2503.29 on cash book, which I now have before me. Previous to making

these entries referred to of September 15, 1882, I heard plaintiff and defendant in conversation about defendant's liabilities to the bank. Plaintiff wanted defendant to secure the amount of his overdraft. Chamberlain proposed to give a deed of trust on the farm to secure the overdrafts and the several notes he owed the bank, provided plaintiff would allow him to withdraw his collaterals placed in bank to secure the old notes, so that he could collect them and apply the proceeds on his indebtedness due the bank. Afterwards and on date of these entries the defendant came into the bank and handed plaintiff a note for $2503.29 and another paper. Plaintiff made a memorandum on the margin of the note that it was secured by deed of trust, and handed it to me, and went to his county map and seemed to be comparing the paper handed him in connection with said map, after which he folded it up and handed it to me and instructed me to put it away.

"The entries I have testified to were made to carry out the agreement of plaintiff and defendant, the note for $2503.29 being the amount of all defendant's indebtedness to the bank, with interest to September 1, 1882. I accordingly balanced defendant's overdraft $1733.95, and applied the residue, to-wit, $769.34, on the three old notes of one hundred dollars, two hundred and twenty-five dollars and three hundred and fifty dollars respectively and interest on same $94.34, and surrendered them to him, and entered the amount of new note, $2503.29 on cash book and registered it on discount register as secured by deed of trust in pursuance to the memorandum on the margin. I did not examine the paper handed to me to see if it was a deed of trust. On the individual ledger of the bank now before me I find credited to L. C. Chamberlain's account of dates December 29, 1882, four hundred and ninety-two dollars and, December 30, 1882, $507.96; on January 3, his account was charged with check of one thousand dollars; on

July 28, he is credited with five hundred dollars and on same day charged with check of five hundred dollars."

James M. Bohart testified as follows: "I am the owner of two-thirds of the Lathrop bank, W. T. Clark owning the other one-third interest. I told Mr. Clark to notify Chamberlain in regard to the payment of his note as it had been long past due. Chamberlain paid no attention to these notices, and afterwards I met him on the streets of Lathrop and asked him in regard to the payment of the note; he told me that he did not intend to pay it, then I went back to the bank and examined for the security and found memorandum on margin of note showing it to be secured by deed of trust. I then searched for the deed of trust, and failing to find it I examined the records, and finding no record I placed the matter in the hands of an attorney."

This was all the evidence introduced by plaintiff.

The defendant, to maintain the issues on his part, introduced evidence as follows: Lucian C. Chamberlain, in his own behalf, testified as follows: "I never made a mortgage or deed of trust to the plaintiff to secure any sum of money or any one. He asked me once to make a mortgage to secure the note mentioned by him, but I refused. I told him that the notes which the bank held as collateral, with what would be coming in to me from brick that were to be put in a building for them, would be sufficient to pay what I owed at the bank. The notes held as collateral were not returned to me, but were collected by the bank and credited as collected on my note. I could not have made a mortgage or deed of trust on the southwest quarter of section 30, in township 55 of range 30, as one eighty acres of this quarter was never owned by me. The west eighty acres was bought by my wife, with her money, and the deed was made to her, and I have never had any interest in it."

B. J. Burk testified: "I am a justice of the peace and notary public, residing in Lathrop. I have no recollection of taking the acknowledgment of a deed

of trust or mortgage from the defendant to the plaintiff. I keep a record of such transactions, and have examined since I was subpœnaed in this case and find nothing of the kind there. From this fact and the further fact that the defendant has been unfriendly to me for several years I am sure I never took such an acknowledgment."

On cross-examination witness said: "It is possible that I might have taken such acknowledgment and failed to make any record of it." This was all the evidence. Thereupon the court found for the plaintiff and entered a decree as prayed, and the defendant appeals.

The facts, detailed in the foregoing statement, afforded a sufficient basis to warrant the finding of the lower court that a deed of trust, as charged in the petition, was executed by the defendant, and that the same was lost without being recorded.

And no doubt is entertained that a court of equity would have jurisdiction to afford the relief prayed for in the petition. One of the most common interpositions of equity is in the case of lost deeds and instruments. A court of equity in case of the loss of an instrument which affects the title or affords a security will direct a reconveyance to be made. *Stokoe v. Robson*, 19 Ves. 385; 1 Story's Equity Jur., secs. 81, 84; *Lawrence v. Lawrence*, 42 N. H. 109; 1 Mad. Ch. 24; Fonblanque's Equity, ch. 1, sec. 3.

And *accident is* one of the most ancient foundations of equitable jurisdiction. So that, even if a remedy could be had at law, this would not oust the original jurisdiction of a court of equity. 1 Story's Eq. Jur., sec. 81; 2 Pomeroy's Eq., sec. 831; 1 Pom. Eq., sec. 280.

In the case at bar the petition made out the requisite allegations to invoke equitable relief. Under the authorities cited, the lower court might have directed a re-execution of the deed of trust; but, as its

powers were flexible, it could accomplish the same object by a declaratory decree, establishing the existence of the deed in question. 2 Pomeroy's Eq., sec. 827; *Garrett v. Lynch*, 45 Ala. 204; 1 Pomeroy's Eq., secs. 171–429.

Holding these views, we affirm the judgment. All concur.