# CHARLESTON.

CARTRIGHT v. CARTRIGHT *et al.*

Submitted June 7, 1910.   Decided March 19, 1912.

1.  PARTIES—*Objections—Demurrer.*
    Want of necessary parties, not appearing on the face of the bill, can not be raised by demurrer.  (p. 509).

2.  SAME.
    A bill against a number of parties, as heirs of a decedent, is not demurrable because it does not aver that the parties named are all of the heirs.  (p. 509).

3.  LOST INSTRUMENTS—*Establishment—Jurisdiction of Equity.*
    Equity will entertain the suit of a grantee of real estate to establish a lost deed when such relief is necessary for the protection of his rights in respect to the land granted, although no other relief be demanded by his bill.  (p. 509).

4.  SAME—*Title to Realty.*
    The right to have his title appear properly upon the record, is a substantial property right which the law guarantees to a land owner.  (p. 509).

5.  SAME—*Establishment—Bill.*
    A bill to establish a lost deed need not aver the boundary lines contained in the deed. If the bill identifies the land, the boundaries may be proven.  (p. 511).

6.  BOUNDARIES—*Evidence—Survey.*
    A survey and map, made, after the deed was lost, by a surveyor who acted only upon information in relation to the boundaries therein contained, is not evidence to prove the boundaries.  (p. 511).

7. WITNESSES—*Competency—Testimony as to Transactions with Persons Since Deceased.*

In a suit to establish a lost deed, brought by the grantee against the heirs at law of the deceased grantor, the heir is not a competent witness to prove a conversation between himself and the deceased grantor, relating to the alleged non-delivery, or destruction of such lost deed. (p. 512).

8. LOST INSTRUMENTS—*Evidence—Delivery.*

Delivery of a deed is an essential element of its due execution, and the burden is on him who claims title under a lost deed to prove its delivery. But it may be established by proof of the grantor's declarations and admissions. (p. 512).

9. WITNESSES—*Competency—Transactions with Persons Since Deceased.*

The husband of a deceased wife, who joined her in the making of a lost deed conveying her separate real estate, although a party to the suit, is a competent witness, against the heirs at law of his wife, to prove delivery of the deed to the grantee, after the same was signed and acknowledged by himself and wife. The delivery, in such case, is not a personal transaction between himself and wife, but a transaction between his wife and the grantee. (p. 512).

10. SAME.

If delivery of a deed to the grantee be fully proven by other competent witnesses, the grantee is then competent to prove its subsequent loss. (p. 513).

11. LOST INSTRUMENTS—*Establishment—Pleading.*

If the answer to a bill setting up a lost deed, admits that such deed was signed and acknowledged by the deceased grantor and her husband, it will be presumed that it was properly signed, and properly acknowledged by both. (p. 514).

12. SAME—*Disposition of Cause—Reversal—Remand to Lower Court.*

On the reversal of a decree denying relief to plaintiff on a bill to establish a lost deed, this Court will remand the cause with instructions to the lower court to grant the relief by appointing a commissioner to execute a proper deed. (p. 515).

Appeal from Circuit Court, Marion County.

Bill in equity by Bessie D. Cartright against Lowry F. Cartright and others. From a decree for defendants, plaintiff appeals.

*Reversed and Remanded.*

*L. S. Schwenck* and *B. L. Butcher,* for appellant.

*W. S. Meredith,* for appellees.

WILLIAMS, JUDGE:

Bessie D. Cartright brought suit in equity, in the circuit court of Marion county, against the heirs at law of Nancy A. Cartright, deceased, to establish title to a tract of land claimed by deed, alleged to have been lost, and never recorded. She avers that the deed was made and delivered to her by Nancy A. Cartright, her grandmother, in 1903; that she then carefully put it away; that, shortly after the grantor's death, it disappeared from the place where she had kept it, without fault of her own; and that by diligent search she was unable to find it. She swears to her bill, and prays that her title be established, free from the claims of the heirs of Nancy A. Cartright, deceased, and that she be granted general relief.

Maria F. Snodgrass, a daughter of Nancy A. Cartright, is the only one of the numerous defendants who makes defense. She demurred to the bill, and also answered. Her answer admits that the deed was signed, sealed and acknowledged, but denies that it was ever delivered to plaintiff, or to anyone else for her, and evers that Nancy A. Cartright retained possession of it, until a short time before her death, and then destroyed it in respondent's presence. There was a general replication to the answer, depositions were taken by plaintiff and by Maria F. Snodgrass, and the cause was heard on the 24th of June, 1908, and a final decree rendered denying relief and dismissing plaintiff's bill, and she has appealed.

It is suggested in brief of counsel for appellees, that it does not appear from the bill that all the heirs of Nancy A. Cartright are before the court. True, it does not expressly aver that the numerous defendants named are all of her heirs at law, but their relationship to her is averred, from which it appears that they are her heirs at law. If there are other heirs, not named in the bill, it would be cause for a plea in abatement, but no such plea was filed. The bill does not disclose the absence of any necessary party to the suit, hence it is not demurrable for want of necessary parties.

It is also urged that equity will not entertain a bill to estab-

lish a lost instrument, or to compel re-execution of same, unless some additional relief, under the instrument, is demanded by the bill. We need not stop to consider whether such ancillary relief is essential to confer jurisdiction, or not. Because the averments of the bill disclose a substantial property right in plaintiff which is necessary to be protected by the establishment and recordation of the lost deed. Plaintiff is not entitled to possession of the land, for the bill avers that by the very terms of the lost deed, a life estate was reserved for grantor's husband, Thornton F. Cartright, who was living at the time the suit was instituted. But, so far as record evidence of title is concerned, on the death of Nancy A. Cartright, the land apparently descended to her heirs, subject to the life estate of Thornton F. Cartright, and there is danger that a *bona fide* purchaser from, or a judgment creditor of the heirs may acquire a right, in respect thereto, superior to plaintiff, because of our recording statutes, and equity will entertain plaintiff's bill to protect her against such hazard, if for no other reason. Moreover, it is the policy of the law to secure to the owner the full enjoyment of his property, one essential element of which is the *jus disponendi,* and while he may not be in immediate danger of an ouster, still if he is not able to deraign title by the record, and is compelled to rely upon the testimony of witnesses to establish it, the market value of his property will thereby be materially affected. In order to relieve the owner's title of such embarrassment and facilitate the transfer of his property, equity will restore a lost deed, even if no other relief be demanded, when the rights of others will not thereby be violated. The following cases will be found to support this conclusion, viz: *Blight's Heirs* v. *Blanks,* 6 T. B. Monroe 192; *Hord* v. *Baugh,* 7 Hump. (Tenn.) 576, 46 Am. Dec. 91; *Griffin* v. *Fries,* 23 Fla. 173, 11 Am. St. Rep. 351; *Cummings* v. *Coe,* 10 Cal. 529; *Lawrence* v. *Lawrence,* 42 N. H. 109; *Bohart* v. *Chamberlain,* 99 Mo. 622; *Shelmardine* v. *Harrop,* 6 Madd. 40; *Sharon* v. *Tucker,* 144 U. S. 533; *New Orleans etc. R. R. Co.* v. *Mississippi College,* 47 Miss. 560.

In *Dower* v. *Suds,* 28 W. Va. 113, this Court entertained a bill brought to establish a lost will, and it does not appear that any rights, under the will, were sought to be enforced by that

suit.   The matter of jurisdiction seems not to have been there mooted.   And while the opinion does not deal with the question of jurisdiction, the Court evidently regarded the case as one entitling the plaintiff to relief.   There is no distinction between a suit to establish a lost will, and one which seeks to set up a lost deed, so far as they relate to the question under discussion. Therefore, the fact that plaintiff is not entitled to the present possession of the land is no ground for denial of her prayer. Her title in remainder is a vested estate.   It has a present value and is transferrable.   If her case is proven, she has a right to have her title established by decree of court, in order that she may enjoy more fully her property right, and be protected from the hazard of losing it in the manner above stated.   Her bill shows that she has substantial rights to be protected.

It is insisted that the bill does not sufficiently describe the land conveyed to enable the court to decree the re-execution of the lost deed.   But we do not understand that plaintiff attempts to set out particularly, in her bill, the description of the land as it was given in the deed.   The bill describes the land in a general way, for the purpose of identification.   It does not purport to give the identical description that was contained in the lost deed.   The contents of the deed do not have to be pleaded, that is a matter of proof.   The averments of the bill identify the land, and furnish a basis for proof of a more specific description, not inconsistent therewith.   *Id certum est quod certum reddi potest.*   Thornton F. Cartright and Benjamin Cartright, husband of plaintiff, both testify concerning the description of the land.   Benjamin Cartright says he read the deed, and his testimony in relation to the boundaries is as follows, viz: "Commenced at the creek at two oaks on Phillip Gump's line, then it run west or a little southwest I believe to a dogwood or an oak stump and further to the mouth of the run to a sycamore." He further says this run is known as Long Drain, and that the line ran "from the mouth of the run to the place of the beginning."   Thornton F. Cartright's testimony is not quite so specific as to boundary lines.

Plaintiff had a survey and plat of the land made by one A. C. Martin, long after the death of Nancy A. Cartright.   That survey, of course, can not be regarded as evidence in support of

the deed. But, if it coincides with the description in the deed, we see no reason why the court may not adopt it as a proper description of the land to be made when it directs the making of a new deed to take the place of the lost one. The correctness of the map and lines, proving the tract to contain 18 acres and 102 poles, is not disputed. Maria F. Snodgrass' answer contains the following admission in relation to the description in the deed, viz: "and this respondent is advised that the boundaries thereof as shown in plaintiff's bill is correct, and that said deed included all of said boundaries and appurtenances."

In her answer, Mrs. Snodgrass admits that Nancy A. Cartright and her husband signed and acknowledged a deed to plaintiff, for the land described in the bill. But avers, first, that it was done under duress; and second, that the deed was never delivered. The burden of proving the first averment rests on defendant, and the only evidence of duress is found in the depositions of defendants Isaac C. Cartright and Mrs. Snodgrass, both of whom testify that their mother told them that she had been threatened with violence, if she did not make the deed. These witnesses, being interested parties to the suit, were clearly incompetent to testify in relation to conversations had with their mother, against plaintiff, who claims to be her grantee, and their testimony was very properly suppressed by the lower court. Their testimony out, there is no proof whatever of duress.

But delivery is one of the essential elements to establish due execution of a deed, and plaintiff must prove it. Without delivery, title does not pass. Plaintiff is not a competent witness, against the heirs of her grantor, to prove delivery. But there are a number of witnesses who testify that Nancy A. Cartright told them that she had made a deed to "Bessie," and had given it to her. So says Nathan Booth, Phillip Gump, Susan A. Rose and McClelland Rose, all of whom were her near neighbors, and had frequent talks with her. Thornton F. Cartright, husband of Nancy and joint maker of the deed, was a competent witness to prove its delivery, and he testifies as follows, viz: "Q. Do you remember anything about any deeds to Bessie Cartright? A. Why yes, my wife and me made her a deed. Q. When was that? 'A. I don't remember the time. It's been seven or eight, or maybe ten years ago. Q. What did you do with

the deed? A. She has the deed I reckon. Q. What did you do with it when you made it? A. It was given to her, to Bessie. Q. Who acknowledged it? Do you remember who the Notary was? A. I cannot remember who it was now. Q. Was it Bill Daskin? A. I think not. It might have been. I cannot tell you. I forget."

Plaintiff is a granddaughter of Nancy A. Cartright, deceased, and lived with her from infancy. When she grew to womanhood she married her cousin Benjamin Cartright, and they together made their home with their grandparents, and plaintiff took care of her grandmother, who was a very old lady, until a short time before her death, when plaintiff herself became ill and was not able to do so. However, she still continued to live in the same house with her. Maria F. Snodgrass is a married daughter of Nancy A. Cartright, and lived in the State of Kansas. She visited her mother during her last illness, in Marion county, West Virginia, and remained with her until she died. She and her niece, the plaintiff, appear not to be on very friendly terms. The deed sought to be established was made in November, 1903, nearly three years before Nancy A. Cartright died. At that time Mrs. Cartright, who was growing old and feeble, concluded to dispose of her land. Accordingly, she and her husband signed and acknowledged the deed to plaintiff, and two other deeds—one of which was to Mrs. Snodgrass and her brother Isaac C. Cartright, who lived in Jasper county, Missouri, and the other to the same grantees and to the heirs of John Cartright, deceased, jointly. In all of these conveyances Mrs. Cartright retained a joint life estate for herself and husband. But the deeds to Mrs. Snodgrass and her brother were not delivered to her until August, 1906, when she came to visit her mother, in her last illness. It was sometime during this visit that plaintiff claims her deed disappeared from the place where she kept it.

Delivery of the deed to plaintiff having been proven by competent witnesses, we are of the opinion that plaintiff is competent to prove its subsequent loss. She testifies that, when her own deed was delivered to her, her grandmother also gave her other deeds for safe keeping, and that she kept them all in a receptacle under the bed in a room occupied by her grandmother and her-

self; that one day, while Mrs. Snodgrass was there, her grand-
mother called her into the room and sent Mrs. Snodgrass out,
and asked her to get Mrs. Snodgrass' deed, and she did so, and
handed it to her grandmother, and she gave it to Mrs. Snod-
grass; that she last saw her own deed about the first of Septem-
ber, 1906, and first discovered that it was gone, about the time
her grandmother died, which was October 24th, 1906.   The
clear inference to be drawn from plaintiff's testimony, although
she does not expressly so state, is that Mrs. Snodgrass found out
where the deed was and got possession of it and destroyed it.  On
the other hand, Mrs. Snodgrass and her brother, Isaac Cart-
right, testify that their mother asked for the deed which she
had made to plaintiff; that her husband got it and delivered it
to her, and that she tore it up in their presence, and that her
husband took the torn paper into an adjoining room and burned
it.   But they were not competent witnesses, and their testimony
was properly suppressed by order of the court.   Neither was
plaintiff competent to prove what took place between herself
and her grandmother, and her testimony can only be read for
the purpose of proving where she kept her deed, when she last
saw it and when she discovered that it was missing.   It is fair
to say that Mrs. Snodgrass and Isaac C. Cartright are contra-
dicted by the testimony of Thornton F. Cartright, on the ques-
tion of the deed having been destroyed by Nancy A. Cartright.
He testifies that the deed was not destroyed by him, or by his
wife in his presence.   But he, being a party to the suit and his
testimony being in relation to what did, or did not, take place
between himself and the deceased ancestor of defendants, may
also be an incompetent witness.   However, it is not necessary
to decide whether he is competent to testify on that point or
not.   Because there is no legal evidence that the old lady de-
stroyed the deed.   But even if it were proven that the deed was
destroyed, in the manner claimed by defendant, that would not
divest plaintiff of title.   The proof is that delivery of the deed
was made at the time it was acknowledged, about three years be-
fore it is claimed to have been destroyed.   Title passed upon
delivery, and the subsequent loss or destruction of the deed
could not divest title.

  Another question raised in brief of counsel is, that it does not

appear that the deed had been signed by the husband at the time it was acknowledged by the wife, and that, unless such fact affirmatively appears, the deed must be held not sufficient to pass the wife's title. *Cecil* v. *Clark*, 44 W. Va. 659; *Amick* v. *Ellis*, 53 W. Va. 421; and *Wynn* v. *Louthan*, 86 Va. 946, are cited in support of the proposition. We are of the opinion, however, that it does sufficiently appear that the deed was properly signed and acknowledged, by both wife and husband. We think this fact is established by the pleadings. The bill avers that the deed was signed, sealed and acknowledged by Nancy A. Cartright and her husband, on the 11th day of November, 1903, and that it was delivered to plaintiff. The answer admits that it was duly made and acknowledged, which is evidently an admission that it was properly acknowledged by both parties, but denies that it was ever delivered. It is, therefore, not necessary to prove the virtually admitted fact, that the deed was first signed by the husband, before it was acknowledged by the wife. But, *quaere:* whether it should not be presumed that the husband signed a deed before the wife acknowledged it, if it appear that they both signed, and acknowledged it, if it appear that they both signed, and acknowledged, the same instrument of writing, and it does not affirmatively appear when the husband's name was signed thereto? *Cecil* v. *Clerk, supra,* is a case in which the husband had not joined in the execution of his wife's deed, and afterwards attempted to make the wife's conveyance good, by executing another conveyance, in which his wife did not join, for the same property. *Amick* v. *Ellis* was a suit to enforce against the wife a contract, not acknowelged by her, for the sale of land; and *Wynn* v. *Louthon* was a case involving a certificate of acknowledgment, defective in form, to a deed by a married woman. It does not appear from the report of that case whether the husband had, or had not, signed the deed at the time the acknowledgment was made by the wife. But it is not necessary to pass upon this question, because we think the admission in the answer removes all doubt of the fact that the deed was properly signed and acknowledged by both husband and wife.

We will reverse the decree appealed from, and will remand the cause, with direction to the lower court to appoint a commis-

sioner to make and deliver to plaintiff a deed for the land described in her bill, conveying such title as was vested in her by the lost deed from Nancy A. Cartright and Thornton F. Cartright, her husband, on November 11th, 1903, reserving therein a life estate to the said Thornton F. Cartright.

*Reversed and Remanded.*