JACOBSON ET AL., APPELLANTS, v. ROMAN ET AL., RE-
SPONDENTS.

(No. 4,079.)

(Submitted January 15, 1920.   Decided February 19, 1920.)

[188 Pac. 138.]

*Lost Instruments—Deeds—Re-execution—Equity—Jurisdiction.*

Deeds—Loss or Destruction—Re-execution—Equity.
    1.   Where a deed, after execution and delivery, has been lost or destroyed before recordation, or where the grantor has fraudulently gained possession of and destroyed it, and the title of the grantee is thus affected, a court of equity may decree a re-execution of it.

Same—Recordation—Property Right.
    2.   The right of the owner of real property to have his evidence of title appear properly upon the record is a substantial property right recognized by the law.

Same—Re-execution—At Whose Expense.
    3.   In the case of loss or destruction of a deed before recordation without the fault of the grantor, restoration should not be had at his expense, unless, upon demand, accompanied by the presentation to him of a new deed ready to be executed by him, he refuses to execute and acknowledge it; where, however, he fraudulently gains possession of and destroys it, the wrong is remediable at his expense.

Same—Re-execution—Conveyance Prerequisite—Jurisdiction.
    4.   Jurisdiction to decree re-execution of a lost or destroyed deed presupposes a conveyance; hence where a deed alleged to have been fraudulently obtained and destroyed by the grantor had never been accepted by the grantee, there was no delivery, and therefore no conveyance, and judgment denying the relief prayed for was proper.

Specific Performance—Purpose of Action.
    5.   The purpose of an action for specific performance is to have defendant execute a conveyance of the title which he refuses to convey.

*Appeal from District Court, Sheridan County; F. N. Utter, Judge.*

ACTION by E. I. Jacobson and Julia Keats against Hiram J. Roman, Mabel Roman, his wife, and Aime Catellier. From a judgment in favor of the first-named defendant and one in favor of the last two, the plaintiffs appeal. Affirmed.

Cause submitted on brief of Counsel for Appellants.

*Mr. C. E. Comer,* for Appellants.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Plaintiffs brought this action to obtain a decree requiring the defendants to deliver to them a warranty deed to certain land situated in Sheridan county, or, if delivery cannot be had because of the mutilation or destruction of the deed, then for a decree requiring the defendants to execute another deed and deliver it to the plaintiffs. The complaint is very long. The following brief summary of it will be sufficient for present purposes: That on June 11, 1915, the defendant Hiram J. Roman was the owner in fee of the land, which is of the value of $2,000; that the record title thereto was in his name; that defendant Mabel Roman was his wife, but was not then and never had been in the state of Montana; that the defendant Hiram J. Roman sold and conveyed the land to plaintiffs by warranty deed, duly acknowledged for record; that the deed was then delivered to the plaintiffs; that plaintiffs thereupon took possession of the land and have held possession thereof until the present time, expending large sums of money to improve it; that the consideration for the sale and transfer to plaintiffs was the sale and transfer by plaintiffs to the defendants of certain personal property which was then delivered to defendants, they assuming and agreeing to pay an encumbrance thereon, the amount of which, $312, was specified in the bill of sale then executed and delivered to them by the plaintiffs; that thereafter, on or about June

11, 1915, the defendants fraudulently secured possession of the deed, and have since detained it from the plaintiffs, though plaintiffs have at various times demanded possession of it.

Upon the service of summons the defendants interposed a general demurrer to the complaint, which was overruled. Default was entered against defendants Mabel Roman and Aime Catellier for failure to answer within the time allowed for that purpose. Defendant Hiram J. Roman answered, denying all the material allegations of the complaint, and alleging new matter as a defense, upon which the plaintiffs joined issue by reply. At the time appointed for trial plaintiffs submitted evidence to make their case against the defaulting defendants, and moved for judgment. Thereupon, having called a jury, the court proceeded to try the issues made up by the pleadings between plaintiffs and the defendant Hiram J. Roman. During the trial there was some controversy between opposing counsel as to whether the action is one at law in claim and delivery, or one in equity. The presiding judge was at first inclined to regard it as one in claim and delivery and to submit the issues to the jury accordingly. At the close of plaintiff's evidence, however, counsel for defendants made a formal motion for a dismissal of the action on the ground that the evidence was not sufficient to warrant any relief. After some discussion it was agreed by counsel that the case should be submitted to the court as one in equity, for final decision on the merits on the evidence introduced by plaintiffs. The jury was thereupon discharged. Thereafter the court found generally for defendant Hiram J. Roman and rendered judgment dismissing the action as to him, with costs. A few days later it also rendered judgment denying relief as against the other defendants. Plaintiffs have appealed from both judgments.

Counsel for defendants have not filed a brief in this court. We are therefore left to determine the case as best we may without any assistance from them. As we view it, however, no question is presented to us which we regard worthy of consideration,

other than the inquiry whether the trial court reached the correct conclusion.

Prior to June 9, 1915, the plaintiff Jacobson had owned and been conducting a pool-hall in a leased building in Medicine Lake, Sheridan county. On that day he entered into negotiations with Hiram J. Roman to sell to him the business. It was finally agreed that Roman would take over the business in consideration of a conveyance by him to Jacobson of the land and the payment of $500 in cash. Jacobson was to make to him a bill of sale of the fixtures in the pool-hall and a small amount of cigars, candy and other articles of merchandise. The building, fixtures, *etc.*, were then delivered to Roman, and he assumed possession and continued the business. On June 11 the two, in company with Catellier, met at the State Bank in Medicine Lake to execute and make mutual delivery of the necessary writings. Mr. Gregg, the assistant cashier of the bank, acted as scrivener and notary public. A bill of sale of the fixtures, *etc.*, was executed by Jacobson and delivered to Roman. Roman did not have the money to make the cash payment. It was then agreed that he and defendant Catellier would execute their joint promissory note to Jacobson for $488, due in thirty days, secured by a mortgage on land owned by Roman in Montrail county, N. D. Gregg drew the mortgage, taking the acknowledgment of Roman and Catellier, who also signed it, certifying it for record. It, with the note, was delivered to Jacobson. The consideration for the note was made $488 instead of $500, the amount agreed to be paid in cash because it was found upon investigation that the fixtures were encumbered for $12 more than was supposed at the time the negotiations were begun. Gregg then drew the deed, naming the defendants Roman and wife as grantors and the plaintiff Julia Keats, the mother of Jacobson, the grantee. 'The bill of sale contained a warranty that the fixtures, *etc.*, conveyed by it were free from encumbrance other than the sum of $312 due Koehler & Hinrichs, of St. Paul, Minnesota. According to the testimony of Gregg, Roman signed and acknowledged the execution of the deed, but the certificate of acknowledgment

was left imperfect in that Gregg omitted to authenticate it by attaching his seal, the recital of the place of his residence, and the date of the expiration of his commission, as required by the statute. While it was in this condition, the question arose whether it was a sufficient conveyance unless it should be signed and acknowledged by Mabel Roman also. After some discussion and after both Jacobson and Roman had examined the deed, it was determined that the signature of the wife was necessary. Gregg was requested by Jacobson to forward it to Mrs. Roman, who was residing at Moose Jaw, Canada, for her signature and acknowledgment. Some doubt having then arisen whether she would act upon Gregg's request, it was finally agreed that Roman would forward it, and upon its return by her would deliver it. Roman did forward it. She signed it, but whether she made proper acknowledgment of it the evidence does not disclose. Within a few days she came in person to Medicine Lake, bringing the deed and delivering it to her husband. In the meantime Roman had ascertained that there were encumbrances upon the fixtures, *etc.*, in the form of a mortgage of $125 to secure a debt due to one Wigmore, who resided in Medicine Lake, and for other amounts in the form of purchase-money liens in favor of the dealers from whom Jacobson had purchased them. Upon the discovery of these encumbrances, Roman offered to rescind the sale and return to Jacobson the fixtures, *etc.*, provided he would cancel the mortgage on the Dakota land and surrender the note. Jacobson refused to rescind the sale. Thereafter Roman, upon receiving the deed, blotted out the signature of himself and wife and retained possession of it. Later he gave Jacobson formal written notice that he had elected to rescind the contract, and that he would return the fixtures, *etc.*, upon the cancellation of the note and mortgage. Roman did not deliver possession of the land to plaintiffs, nor did they undertake to assume possession of it.

Counsel contends that, since by section 3713 of the Revised Codes it is expressly provided that a man residing in Montana whose wife has never been in the state may by deed grant full

title to any real estate owned by him in the state by his own signature, the signature of Mabel Roman, the wife, was not necessary to cut off her dower right, and hence that, by reason of the fact that Jacobson had the deed in his hands, there was a delivery to and acceptance of it by him sufficient to enable him to assert title to it and to maintain this action.    It is well settled **[1]** that, when a deed has once been executed and delivered, but has been lost or destroyed before it is properly recorded, and the title of the grantee is thus affected, a court of equity **[2, 3]** has jurisdiction to decree a restoration of it.    The right of the owner of real estate to have his evidence of title appear properly upon the record is a substantial property right which the law recognizes; and a court of equity will entertain an action by him against his grantor to establish the lost deed when such relief is necessary to protect his rights in this behalf, and this whether the loss occurred while the deed was in the possession of the grantee or not.    For a stronger reason will relief be granted if the grantor has fraudulently gained possession of the deed and destroyed it.    In the former case the restoration should not be made at the expense of the grantor, unless, upon demand accompanied by the presentation to him of a new deed ready to be executed by him, he refuses to execute and acknowledge it. In the latter case the grantor has by his wrongful act directly invaded the substantial rights of the grantee, which is remediable at his expense, as any other wrong.    (17 R. C. L. 1170.)

From among the great number of authorities cited by counsel we insert the following: Pomeroy's Spec. Perf. Contracts, sec. 13; 25 Cyc. 1611; 2 Story's Eq. Jur., sec. 125; *Hoddy* v. *Hoard,* 2 Ind. 474, 54 Am. Dec. 456; *Griffin* v. *Fries,* 23 Fla. 173, 11 Am. St. Rep. 351, 2 South. 266; *Hord* v. *Baugh,* 7 Humph. (Tenn.) 576, 46 Am. Dec. 91; *Hudspeth* v. *Thomason,* 46 Ala. 470; *Mason* v. *Black,* 87 Mo. 329; *Bennett* v. *Waller,* 23 Ill. 97; *Cummings* v. *Coe,* 10 Cal. 529; *Conlin* v. *Ryan,* 47 Cal. 71; *Boyes* v. *Ramsden,* 34 Or. 253, 55 Pac. 538; *Cartright* v. *Cartright,* 70 W. Va. 507, Ann. Cas. 1914A, 578, 74 S. E. 655; *Kent* v. *Church of St. Michael,* 136 N. Y. 10, 32 Am. St. Rep. 693, 18 L. R. A.

331, 32 N. E. 704; *Mullins* v. *McCoy*, 170 Ky. 547, 186 S. W. 137; *Little* v. *Stringfellow*, 46 Utah, 576, 151 Pac. 347.

The facts recited above are not controverted. They do not, [4] from any point of view, make a case warranting the relief sought by plaintiffs. There was no delivery of the deed, because the negotiations broke down before they were completed and the deed executed and ready for delivery. Jacobson and Roman were both ignorant of the provisions of the statute. Both were of the opinion that the deed must be signed by the wife in order to convey a perfect title, and for this reason Jacobson did not accept it. If, in his ignorance of the law, he deemed the deed insufficient, the fact that he proceeded upon a misconception can make no difference. The fact remains that he did not accept it, and therefore that there was no delivery. Legal title to the land did not pass; neither did title to the deed itself. The jurisdiction invoked by plaintiffs presupposes that a conveyance already made has been lost or destroyed. We do not mean to intimate that the plaintiff Keats is not entitled, by an action for specific performance, to have the conveyance made to her. The complaint alleges that the conveyance was made, but destroyed; [5] whereas the purpose of an action for a specific performance is to have the defendant execute a conveyance of the title which he refuses to convey.

The district court therefore reached the correct conclusion that plaintiffs were not entitled to any relief in this action as against Roman.

In the foregoing discussion we have treated Jacobson as an interested plaintiff. The purpose of the parties was to have the deed executed to the plaintiff Keats and delivered to Jacobson for her. If this was the arrangement, Keats was the only interested party, and Jacobson, her agent, was improperly joined as plaintiff.

The court also properly denied the plaintiffs relief as against Mabel Roman and Catellier. The evidence introduced to make a case against them was substantially the same as that introduced at the trial of the issues between the plaintiffs and Roman.

It discloses that the only connection Mabel Roman had with the transaction was that she was the wife of Hiram J. Roman. She did not agree to convey; neither did she have anything to do with the mutilation or destruction of the deed. Catellier had no interest in the land, nor was he interested in the transaction in any way, other than as an accommodation to Roman to become personally liable with him to Jacobson on the note and mortgage executed to Jacobson to secure a part of the purchase money for the fixtures in the pool-hall.

Both judgments are therefore affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, HURLY and MATTHEWS concur.

MR. JUSTICE COOPER, being absent, takes no part in the foregoing decision.